Filed 12/29/14  P. v. Hicks CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KHARI MARK HICKS,<br><br>        Defendant and Appellant. | A139903<br><br>(Alameda County<br>Super. Ct. No. 170215) |

### INTRODUCTION

A jury convicted defendant Khari Mark Hicks of multiple offenses relating to pimping, including two counts of human trafficking.  The trial court found true three prior conviction allegations.  Defendant was sentenced to an aggregate prison term of 29 years.  On appeal, he contends there was insufficient evidence to sustain one of his convictions for human trafficking.  We affirm.

### PROCEDURAL HISTORY

On June 27, 2013, the Alameda County District Attorney filed an amended information charging defendant with two counts of human trafficking (Pen. Code, § 236.1, subd. (a);[1] counts one and five), two counts of pimping (§ 266h, subd. (a); counts two and nine), two counts of pandering (§ 266i, subd. (a)(2); counts three and ten), one count of criminal threats (§ 422; count four), one count of kidnapping (§ 207, subd. (a); count six), one count of false imprisonment by violence (§ 236; count seven), and one

---

[1] Undesignated statutory references are to the Penal Code.

1

count of assault with a firearm (§ 245, subd. (a)(2); count eight). It was further alleged that he personally used a firearm during the commission of the kidnapping charged in count six (§§ 12022.5, subd. (a), 12022.53, subds. (b), (g)) and that he personally used a firearm to inflict great bodily injury during the commission of the assault charged in count eight (§§ 12022.5, subd. (a), 12022.7, subd. (a)). The information also alleged that he had previously suffered three felony convictions resulting in prison terms. (§ 667.5, subd. (b).) Defendant pleaded not guilty and denied the allegations.

On June 28, 2013, the trial court dismissed the enhancement for great bodily injury in count eight.

On July 8, 2013, the trial court granted defendant's motion to bifurcate the trial on the prior conviction allegations.

On July 10, 2013, the parties made opening statements and the prosecutor began submitting evidence. The jury began deliberations late in the afternoon of July 22, 2013.

On July 23, 2013, the jury found defendant guilty of all counts. The jury also found the firearm use allegation in count six true.

On July 29, 2013, a court trial was held on the prior conviction allegations. The court found all three allegations to be true.

On September 23, 2013, the trial court denied defendant's motion for new trial and sentenced him to an aggregate term of 29 years in state prison, along with imposing various fines. This appeal followed.

## DISCUSSION

### I. Contentions on Appeal

Defendant's sole claim on appeal is that his conviction for human trafficking in count five must be reversed because it is not supported by substantial evidence.

Former section 236.1, subdivision (a), provides: "Any person who deprives or violates the personal liberty of another with the intent to effect or maintain a felony violation of [specified statutes covering prostitution, child pornography, and extortion],

2

or to obtain forced labor or services, is guilty of human trafficking."[2]  The jury here was instructed, in relevant part: "The defendant is charged . . . with human trafficking, a violation of Penal Code section 236.1. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] [t]he defendant either deprived another person of personal liberty or violated the other person's personal liberty; and [¶] [w]hen the defendant did so, he intended to obtain forced labor or services . . . ."

## II.  Standard of Review

When determining whether the evidence is sufficient to sustain a criminal conviction, "we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Snow* (2003) 30 Cal.4th 43, 66.)  We presume in support of the judgment the existence of every fact the trier of fact reasonably could deduce from the evidence.  (*People v. Medina* (2009) 46 Cal.4th 913, 919.)  Reversal is not warranted unless it appears " 'that upon no hypothesis . . . is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  " 'If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.' " (*People v. Love* (1960) 53 Cal.2d 843, 850–851.)

## III.  Evidence Presented at Trial

We summarize the evidence pertaining to the conduct charged in count five.[3]  Antoinette Doe testified she was 18 years old in 2008 and living in Oakland.  She had

---

[2] Section 236.1, subdivision (a) was amended by voters effective November 7, 2012, after the conduct charged here occurred.  (Prop. 35, sec. 6, as approved by voters (Nov. 6, 2012).)

[3] The amended information alleged that, "on or about September 1, 2008 through December 1, 2009, in the County of Alameda, State of California, said defendant did

3

previously been in foster care and lived in a residential facility in Colorado from 2006 to 2008. Prior to that, she was made to work as a prostitute at the age of 15.

Antoinette met defendant in 2008 when he approached her at a bus stop. He introduced himself as Ray Vaughn. They spent the rest of that day together and stayed at a hotel that night. The next day, he asked her if she wanted to make some money working as a prostitute. She agreed. She started working as a prostitute for him, giving him all of the money she made by selling sex services. The couple also had a sexual relationship. They lived in hotels and the money she made paid for their living expenses.

The first violent episode occurred in 2008 after Antoinette saw defendant with another female in his van. Prior to that, she had believed she was his only girl. He exited the van, chased her inside their hotel room, and choked her by placing his hand around her neck. After he left, she called an ambulance because she was having trouble breathing. He later picked her up from the hospital and they resumed their relationship. She continued working as a prostitute for him.

In May 2009, the police conducted a sting operation after Antoinette posted an ad on Craigslist for prostitution. Defendant drove her to a house where she was eventually contacted by law enforcement. During this time, other girls were also working for defendant. He sometimes asked Antoinette to train them on how to work as prostitutes. On one occasion, she encouraged a young girl to leave defendant because the girl was still a teenager and the prostitution lifestyle was "not worth it." She told the girl not to tell defendant what she had said, but shortly thereafter he came into the room and started choking her and hitting her, saying that she was "messing up" his money. He also hit her face with a belt and pointed a gun at her.

---

unlawfully deprive and violate the personal liberty of Antoinette Doe, with the intent to effect and maintain a felony violation of Penal Code Sections 266, 266h, 266i, 267, 311.4, and 518, and to obtain forced labor and services."

4

## IV. Substantial Evidence Supports the Finding that Defendant Acted with Intent to Obtain Forced Labor or Services

Defendant concedes the evidence is sufficient to support the finding that he deprived Antoinette of her personal freedom by use of physical and verbal violence. However, he claims the prosecution failed to establish that the specific intent behind this behavior was to obtain forced labor and services from her. Instead, he argues the violence he directed at her was an outgrowth of their troubled romantic relationship.

Defendant notes Antoinette testified that her relationship with defendant appeared to be serious, as they talked about marriage and had shopped for an engagement ring. He also notes she testified the first act of violence occurred only after she discovered him with another girl. He argues this evidence shows he reacted to being caught cheating, asserting there was no evidence he beat Antoinette with the intent to obtain forced labor and services from her. He also claims the incident in which he pointed a gun at Antoinette and told her she was "messing with [his] money" by encouraging the young girl to leave, "[fails] to establish that the intent behind it was to force Antoinette to continue to work as a prostitute."

Defendant further asserts an assault that occurred in May 2010 "was motivated by jealousy and a sense of betrayal" after she had become romantically involved with another man while he was in jail. However, he omits her testimony that during this episode he took away her cell phone and shoes and brought her to his house where he ordered several other females to attack her. She testified he kept her in a converted garage and held her there against her will for two days until she provided him with assurances that she would not leave. Several months later, he abducted her off the street while she was working for another pimp. He physically abused her, and then accused her of being a "snitch" at gun point while at the same time professing his love for her.

There was ample evidence that, while defendant may have had some type of romantic relationship with Antoinette, his acts of violence towards her were done with

the intent to keep her working for him. Notably, there was no evidence defendant ever discouraged Antoinette from working for him as a prostitute. Further, she testified that she gave him all the money that she earned by doing so. In addition to the above incidents, she testified generally about his use of physical violence and intimidation against her. She claimed he would "punish" her by choking her, and on one occasion threatened her family because she "knew too much." A defendant's specific intent to commit a crime may be inferred from all of the facts and circumstances disclosed by the evidence. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1130.) It was the jury's task to weigh the conflicting evidence and to decide whether he harbored the relevant intent.

Additionally, the evidence must be viewed in the light most favorable to the jury's verdict. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-577.) Antoinette's subjective understanding of her relationship with defendant represents the only evidence as to their alleged romance. A jury could reasonably infer that defendant's romantic overtures merely represented another form of manipulation designed to keep her working for him. In any event, even if the evidence might be reconciled with a contrary finding, such is not grounds for reversal under the standard of review that we must apply.

## DISPOSITION

The judgment is affirmed.

_____
Dondero, J.

We concur:

_____
Humes, P.J.

_____
Banke, J.

6